Good morning, Your Honors. You're letting your voice drop. I'm sorry. The microphone doesn't pick up well. So just speak as if we were way in the next block and we'll get you. Okay. Thank you, Your Honors. Good morning. May it please the Court, my name is Noah Cantor and I'm here to represent my client, Larry Boecken. And Larry Boecken was a normal guy who was from the Modesto area and he used the protections of the Family Leave Act in order to assist himself in caring for his ailing grandmother who raised him. So what was he doing caring for his grandmother in the park for an hour? Well, Your Honor, that was what Gallo asserted, that he was in the park for an hour. Larry Boecken was taking a short walk. That, that, there's no dis- I thought he admitted on deposition that at least with regard to one day, I can't remember if it was October 27th or October 28th, he didn't get home for two and a half hours. I understand that. Well, on that day- So my question is, what evidence is there in the record that he spent that time in any way caring for or in close proximity to his grandmother, which is what, which is how I read our case law on caring for. Right. And, Your Honor, I understand, and I'm going to address the issue of the walk. Larry Boecken, for those hours that he was not at home, was, was going for a short walk in the park. However, a lot of that time is kind of augmented by Gallo in the process of him clocking out, getting in his car, driving home, and in large part doing errands that were specifically in the act of caring for his grandmother, shopping for dietary supplements, hardware for, for a hand railing. And while he was in the car, in the park going for a recuperative walk after work, after working an eight-hour shift, he did this as part of his normal routine and in order for him to- I understand how his activities in the park, you know, are basically, you use the word recuperative, but he's not the one who's recuperating. It's the grandmother. And the employer basically said, look, we fired him because he misused his family medical leave time. He wasn't home taking care of grandma. He was taking care of himself, whatever he was doing. So why is that an impermissible reason for the employer to take disciplinary action? Well, first- For abuse of leave. First, and I think this is actually one of the most important facts in this case, Gallo did not have the right to terminate him for anything but a dishonest use of that leave. And at trial court, they did not- Do you grieve this under the collective bargaining agreement? No, Your Honor. The issue, and I- I mean- The trial court also addressed the same exact issue, but I was trying to explain the issue of whether they had the right to terminate him or not did not-was not necessarily a separate cause of action. What it was was to show that the employer's reason was pretextual. It was false. Well, before we get to the pretext issue- Yes. I guess the question that I heard you raise was whether or not misuse of leave is a dishonest act. And I think a pretty good argument could be made that if you say that you're taking-forget about medical leave. Let's say, you know, that you're taking sick leave but you're not really sick and you get caught skiing by some of your coworkers- Right. And your employer fires you for that, that that's an act of dishonesty. You lied to your employer about what you needed the time off for. Right. And, Your Honor, the cases that Gallo relied on were cases where the employee admitted to not providing any care during the time of the family leave. In this case, a small portion of the time of his leave he was in the park taking a walk. They can't take-they can't count against him the time he was driving home, which is considerable. They can't count against him the time he was shopping for dietary supplements or hand railing for his grandmother. And they do this, and do this in order to maximize the time he was away from his grandmother in the house. However, even Gallo, Gallo in their human resources representative, admits that they are misinforming their employees that they can't use the leave to go shop for dietary supplements or to go on errands. We said in the Alaska Airlines case you can't use the time to go fly to Atlanta or wherever it was and drive a car back because you need a car that will run better. Right. In that case, he didn't care for his-that was the entirety of the leave. And this time, Larry Boken says I was caring for my grandmother during that time. It wasn't the entire four hours, but I can't be expected to adhere to some unknown rule that I didn't-you know, I didn't know about the rule and count against me the things that are protected under that. I think you're going to have a tough argument saying that he wasn't aware that walking in the park wasn't taking care of his grandmother. That's like they didn't tell me not to pick the daisies. Your stronger argument, it seems to me, is the notice issue. That is, was he given notice that he could be fired for doing that? That seems to be the stronger-the stronger issue because this was not designated as a serious violation, and therefore he was wrong, but there's progressive discipline. Right. Sorry. Now, it seems to me that focusing on that area was-is more productive of your time. Oh, okay, Your Honor. I-well, I-my view is that the issue of pretext was the most important. I'm only speaking for one-third of the bench, you understand. I understand. I agree that the issue of having-having a restriction that goes beyond what the-well, I say-I-I'm not deciding this-I say goes beyond what the law allows, and then firing him for something that they admittedly do not have the right to do, because they admitted that he was not dishonest. Several times they admit that, oh, I know that Larry did not know that he was doing anything wrong. That in and of itself creates a situation where they are firing him for a-for-for misuse, which is not an enumerated reason. I'm just repeating what I told you. Now, the real point- Sorry. The real point is that it wasn't raised in the district court. It's a good argument, but it wasn't raised in the written pleadings in the district court. Which one wasn't? I'm sorry. The issue that we're just talking about now, the serious violation, and it should have been a progressive discipline, was not raised in the briefs, the written briefs. It was argued orally. Your Honor- What I'm really getting to is, is that issue preserved? I think it's a good issue, but I think you've got a problem with whether it's preserved. Well, I'm sorry, Your Honor, if it feels that way. I feel and I did argue, at least in part, summary judgment, and I only mentioned the issue of whether they had it they had a right under the progressive discipline a couple times. And so- It was oral. And we have, our rule is that unless you advise in your written argument to the judge on a summary judgment, then it's waived. Okay. So I don't know what we do with that. Okay, Your Honor, and I'm going to ask you to, and treat me to, I raised the issue of whether it was pretext as to whether they had a right to fire him under the progressive discipline in the briefs as to the issue of whether, if they admitted he wasn't dishonest, they could not fire him for serious misconduct. And I believe that was in the briefing in the summary judgment and was raised as an issue of pretext. Pretext dealing with his sexual orientation or whatever. As well as the falsity of the reason the employer gave that they had a right to terminate him for a, some serious misconduct under the CBA and then never presented any CBA or anything else to the court to show that. Okay. For serious, for serious violation, but it wasn't in the handbook that he had received fair notice, I understand. Right. Thank you, Your Honor. Thank you. All right. Good morning. Good morning. And it pleases the Court. My name is Jennifer Redman for Gallo Glass. So I want to start by addressing your question. First of all, under the FMLA, the Batchelder case, the CFRA, the California Family Rights Act, the Faust case, the legal standard is very simple. It's was the employee taking the leave for one of the enumerated purposes in the statute and was a negative action taken for that reason? Under that very simple standard, in a sense, kind of a strict liability standard, it doesn't matter whether the employer acted in good faith or bad faith. Other circuits have that rule. We do not. It, pretext is irrelevant. You can see in Batchelder, the court says, we don't care about pretext. All we want to know is did the person use the leave for an enumerated purpose? And if so, was negative action taken against that person? Let me ask you, what would, excuse me, go ahead, Judge Marlowe. What, would he have been within his leave rights to stop off at Home Depot and pick up hardware to put, so he could put the handrail on Granny's wall, whatever it is? That is a closer question than the walk in the park. And that takes us to the issue of the close and continuing proximity, which is the standard here in the Ninth Circuit. I think for our purposes, we can focus on the time spent in the park, because it was approximately 25% of his leave time on both days. I think I'm hearing you say you don't have a problem with him going to the Home Depot. I'm saying I'm not going to argue about that today. And what about his going to get the, what is it, insurer or something that? Yeah, I think the issue with both of those errands is that Mr. Boken admitted that neither was urgent. He didn't actually pick up either item that day. There's no requirement that it be urgent. I'm just asking, would that be taking care of Grandma as far as you're concerned? It might well be. Okay, now what about, suppose he, and I'm just thinking hypothetically, suppose he had gone to the Home Depot and then he goes to the Safeway to get the insurer, and then he goes home, and then he takes a walk around the block. What then? Okay, so there's all kinds of hypotheticals one can pose. That's not actually what happened here. I know it. That's why I said it's hypothetical. So let's say, well, I mean, when I argued with Judge Wanger, you know, I talked about going next door and I think working on the Nordic track or, you know, doing something in relatively close proximity. If he took a walk around the block that was five minutes long to clear his head, would I be here arguing about it? Probably not. So are we arguing that it took place at the park and not around the block? Is that what we're? We're arguing that he was some distance from home. We know it's about a 25-minute drive for him, that he went straight from work to the park, that he walked there for his own purposes, not to care for his grandmother, for 45 minutes to an hour on both days. That's what we're arguing. So I want to go back, Justice Wallace, to your question, which is this issue of the CBA. And I think that there's a California case that actually predates Batchelder, which really deals with this issue. That's the firefighter case that's cited throughout the briefs. And that was a gentleman who was taking California Family Rights Act leave to care for his wife. He was a firefighter. During the two-and-a-half days of leave, he answered a call to fight a fire for a side employer, not his regular employer, for one hour, okay? He brought a claim saying, you breached an agreement not to fire me except for cause, and you also violated my CFRA rights. And in that case, the fact finder found that there was a breach of contract. And in that case, the guy was just like Mr. Boken. He said, you know, he admitted, he put it down in his time sheet he was fired for time card fraud, okay? When questioned about it, he admitted, just like Mr. Boken, all right? The employer still fired him. The fact finder found that to be a breach of the contract, but not a violation of the CFRA. Because remember, under the legal standard, good faith, bad faith, doesn't matter. Pretext is irrelevant under that standard, all right? So here, again, we have the CBA. He did grieve the termination under the CBA. The union grieved it. That's in the record. The union withdrew the grievance, and no arbitration was pursued. So that remedy was available to Mr. Boken to argue that Gallo did not comply with its CBA. But again, that is irrelevant to the FMLA and CFRA claim. It is, I understand, argued as relates to the perceived sexual orientation claim. But there, Your Honors, I would submit that there was no inference that could have been drawn that Gallo was motivated by anything other than Mr. Boken's taking the time to go to the park on both days when he was supposed to be home caring for his elderly grandmother, who, according to Mr. Boken, had been unable to go to the bathroom without assistance since 6 a.m. that morning. Okay. We've got all that from the briefs, but come back, if you would, please. The Gallo has a handbook, and it's their relationship, their contract with their employees. And it's got the appropriate problem where they increase the penalties as it goes along. In this case, he was fired immediately for this, but the handbook says that's only for serious violations, and this isn't considered a serious violation. So why isn't he right on the sense that he was improperly filed? He didn't get his increased violation, increased penalties? Well, I'm not sure where it says that this was not serious misconduct under Gallo's policy. There is a provision in the policy that provides for non-progressive discipline. It provides a list of potential bases for what they call immediate suspension pending termination. So that's firing. And it's not in there. Well, there are things like dishonesty, Your Honor. Mr. Porter said you admitted, your site admitted, that this was not a dishonest act. There was an admission by the HR professional that he didn't have a reason at that point in time to disbelieve what Mr. Boken was saying. That's the admission. Is there anything to contradict that? Well, they then, they view the video, they listen to what he has to say, they review the report, they compare what they are hearing. His point, I'm not sure I'm making myself clear, his point was that they, that Gallo concluded that right, wrong, or otherwise, Boken thought he was within his rights to stop off on the way home. He did think he was within his rights, apparently. Okay. And so that he wasn't being intentionally dishonest in taking leave and then stopping off at the park. That is what he said. You don't disagree with that analysis? That's what he said. I don't disagree with that. What I do say, and again, I want to take it. Well, then, in answer to Judge Wallace's question, how do you fire him for dishonesty under those? Okay, and I'm going to take you back to what the legal standard is under the FMLA and the CFRA, which is a, as I said, a standard that does not take into account in any way, shape, or form, pretext, good faith, bad faith, failure to comply with your policy. None of that is correct. You do not import the requirements of the CBA or your company's policy into the FMLA or the CFRA. Is that contained in your employee handbook? There is a notice of rights and responsibilities and a certification that's provided to the employee that talks about the purpose of the leave and what they may take it for. But the handbook does not specifically, to answer your question, say that FMLA abuse is an item of serious misconduct. Okay. And, Al, I think I have your argument. Let's assume for sake of argument that he made a reasonable argument, one that we ought to give consideration to, that he should not have been fired. It should have been progressive discipline. But then he fails to raise it in his written pleadings. You didn't object to that when the case got up here, and that's usually a waiver. So we have his waiver, because he failed to put it into his written pleadings, but then we have your waiver of not objecting to it. So do we have a waiver of the waiver, and we have the issue before us? Okay. Well, Your Honor, we did raise in our brief his failure to raise noncompliance with the CBA, and we did submit supplemental excerpt of record to show, again, that it was not in his reply brief. So I don't believe there's been a waiver. We raised the issue. Raised the issue here? Yes. What page was that? Was that in your brief? It was in our brief, Your Honor. I'm sorry, I don't have the page number right here, but it is in the brief. We raised the issue that he did not raise the underlying issue of CBA noncompliance. I'm sorry, I missed it, and I've read your brief, but I'll go back and reread it. I'd like to get back to what exactly a person taking leave can do besides maintaining a bedside vigil. What, in your view, how would we write an opinion? Where does the line change? So, again, I think that certainly the purpose of the statute is to allow people to balance their obligations to their family or their own health issues with work life. We know that. I think that when you write your opinion, I think it's relatively straightforward here because we have someone who is telling the court that what they want to do is engage in their normal after work activities. I would like to go and have a glass of wine and hang out with my friends after work for an hour before I go home and undertake the FMLA leave to care for my grandmother. I would like to go to the gym. Okay, but I guess under your construct, he could have a glass of wine when he got home. Is that right? Absolutely. We're talking location. That's one factor we would put in our opinion that he was at the park and not at home. Location and time. You have to consider the amount of time as well. He was in the park for what, 30 minutes? No, he was approximately an hour on both days. I think Mr. Boken testified approximately one hour on October 28th. I think the investigator's report makes it clear and the video that it was approximately 50 minutes on the 27th. That's almost 25 percent of his leave. Okay, I see you're out of time unless there are any other questions. I don't think so. Thank you. Thank you. Mr. Canner. Thank you, Your Honor. I'd like to address the purpose behind the Family Leave Act, which plays into what we were just discussing and why the purpose of the leave was for him to care for his grandmother, and he did care for his grandmother, at least a good portion of that time, and to balance his family and work life. To do what Gallo did interferes with his right under this act and the purposes of this act. The statute doesn't say anything about balancing his family and personal time. It says that the employer must grant time away from work to care for the family in need of care. Right. And I think when – and I try to list as many hypotheticals as possible, but intermittent leave does not have to be taken on an hourly basis. It can be taken for weeks at a time. So by their view, a person would have to go home and never, ever be caught outside the proximity of that home or they risk being fired. And that discourages employees from using that leave. If they use a week, they could not – But we know that there are limits to that. For example, the Alaska Airlines case that, you know, assuming that he'd taken the full 12 weeks, they probably could have fired him for spending a week driving the car back from Atlanta. Right. And in that case, he admitted not providing – nothing that he thought was actually providing care. But in this case, a good portion of the time was providing care. So the case really turns on whether 25 percent of non-caring for time is enough to justify the termination. And whether having an employee fear that they could be terminated for being seen outside the proximity of their home during the Family Leave Act, whether that discourages and interferes with the purpose of FMLA. Thank you very much, Mr. Kanter. Ms. Redman, thank you. The case just argued is submitted.
judges: Wallace, Silverman, Tallman